# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# PADUCAH DIVISION

MARCELLINA CORDES, ET AL.                                    PLAINTIFFS

v.                                                  No. 5:21-cv-24-BJB

UNITED SPECIALTY INSURANCE                                   DEFENDANTS
COMPANY, ET AL.

\* \* \* \* \*

## MEMORANDUM OPINION & ORDER

According to the complaint, cars driven by Jaime Guzman and Marcellina Cordes collided in Benton, Kentucky in January 2018.  Complaint (DN 1-3) ¶ 11.  Guzman's employer, Angulo Transportation Services, owned the car he was driving.  *Id.*  United Specialty insured that car under a policy that provided up to $1 million in coverage.  ¶ 21.  Cordes asked United Specialty to cover her lost wages and medical bills, received no response, and sued Guzman and Angulo Transportation in Marshall County Circuit Court.  ¶¶ 15, 20, 45.

No lawyer appeared to defend Angulo Transportation, even though its insurance policy with United Specialty included a duty to defend.  ¶¶ 60–61.  The Circuit Court awarded Cordes a default judgment for approximately $4.3 million.  ¶¶ 62, 65.  Counsel for United Specialty then appeared and asked the court to set aside the default judgment.  ¶ 67.  The court declined, instead admonishing counsel for representing Angulo and Guzman despite an apparent conflict of interest.  ¶ 86.

Cordes struck a deal with Angulo and Guzman: she would "not collect the judgment directly from Angulo Transportation or Guzman beyond the limits of their insurance coverage if they would assign all claims against Defendants [in this case] to Cordes."  ¶¶ 80, 85.

Cordes, Angulo, and Guzman then filed this lawsuit against (1) United Specialty; (2) Texcaz, United Specialty's managing general underwriter; (3) OneSource Claims Management, a third-party administrator; (4) Vaccaro & Associates, the third-party administrator that preceded OneSource; and (5) Arthur J. Gallagher & Co., Angulo's insurance broker.  ¶¶ 4–8.  The plaintiffs assert a number of claims under Kentucky common law and the Kentucky Unfair Claims Settlement Practices Act.  ¶¶ 88–162.

OneSource, with all defendants' consent, removed to federal court on the basis of diversity jurisdiction.  *See* DN 1.  The defendants have all filed motions asking the Court to either dismiss or enter judgment on the pleadings.  DNs 6, 8, 21, 26, 49.  The

plaintiffs moved to remand the case back to state court. DN 24. This Order addresses all the pending motions.

## I.     Plaintiffs' Motion to Remand

First, jurisdiction. A defendant "bears the burden of showing that removal was proper," and "any doubts regarding federal jurisdiction should be construed in favor of remanding the case to state court." *Citizens Bank v. Plasticware, LLC*, 830 F. Supp. 2d 321, 324–25 (E.D. Ky. 2011). A court decides a remand motion based on "the plaintiff's complaint, as it is stated at the time of removal, and the defendant's notice of removal." *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). The Court "may look beyond the pleadings to assess challenged facts," *id.*, although it may not consider a proposed amended complaint, *Anderson v. Merck & Co., Inc.*, 417 F. Supp. 2d 842, 844 (E.D. Ky. 2006).

Removal is proper if the Court would've had "have original jurisdiction" over the case had it first been filed in federal court. 28 U.S.C. § 1441(a). OneSource removed on the basis of diversity jurisdiction, which requires complete diversity between the plaintiffs and defendants and an amount-in-controversy exceeding $75,000. § 1441(b); 28 U.S.C. § 1332(a).[1]

The remand motion rests on the fact that Plaintiffs Angulo Transportation and Guzman as well as Defendants United Specialty and Texcaz are all Texas citizens. Notice of Removal (DN 1) ¶¶ 1–8. But OneSource (echoed by the other defendants) contends diversity exists because Angulo and Guzman assigned all their rights to Cordes, and therefore are either "nominal parties" or were "fraudulently joined." ¶¶ 13, 14.

The defendants are right. In determining diversity jurisdiction, "a federal court must disregard nominal parties and decide jurisdiction only on the citizenship of the real parties in interest." *Mortenson Fam. Dental Ctr., Inc. v. Heartland Dental Care, Inc.*, 526 F. App'x 506, 508 (6th Cir. 2013) (citing *Certain Interested Underwriters at Lloyd's v. Layne*, 26 F.3d 39, 42 (6th Cir. 1994)). Kentucky law determines whether the assignor or assignee is the real part in interest. *Hayden Energy, Inc. v. Endeavor Energy Res.*, No. 4:05-cv-157, 2007 WL 854727, at *1 (W.D. Ky. Mar. 16, 2007). And under Kentucky law, the assignee becomes "the owner of the cause and … the real party in interest" if "the cause of action is assignable, and the entire cause has been assigned." *Louisville & Nashville R.R.  v. Mack Mfg.*, 269 S.W.2d 707, 709 (Ky. 1954). Bad-faith claims are assignable under Kentucky law. *See Godfrey v. PNC Bank, Ky.,* No. 2002-ca-2213, 2004 WL 1175742, at *3 (Ky. Ct. App. May 28, 2004). Because no one questions that Angulo and Guzman assigned

---

[1] The parties do not contest that the amount-in-controversy requirement is met, and the amount in controversy clearly exceeds $75,000. *See, e.g.*, Complaint ¶ 89 (alleging Cordes deserved policy limit of $1 million); ¶ 100 (alleging additional damages for emotional distress, fees, and expenses).

rights in this case to Cordes, the only remaining question is the scope of that assignment.

Angulo and Guzman are not real parties in interest. The Complaint states that "Angulo Transportation or Guzman agreed to [assign] all claims against Defendants to Cordes." ¶ 85. The pleadings go on to repeat, in multiple paragraphs and without qualification, that "Angulo Transportation and Guzman have assigned their claims against Defendants to Cordes." ¶ 111; *see also* ¶¶ 120, 126, 132, 138, 144, 151, 155, 160 (all same). These paragraphs are consistent with the Complaint's characterization of Cordes's offer: she would "not collect the judgment directly … if they would assign *all* claims against Defendants to Cordes." ¶ 80 (emphasis added). Under Kentucky law, once the entire cause of action is assigned, the assignor is no longer a real party in interest. *Louisville & N. R. Co.*, 269 S.W.2d at 709.

Plaintiffs argue the assignment was only partial. Curiously, despite the raft of filings in this case, no one attached or even quoted the assignment agreement. Instead, plaintiffs rely on an affidavit from Hector Angulo, owner of Angulo Transportation: "As part of that agreement Angulo Transportation has agreed to participate in the pursuit of the assigned claims, *to pursue in its own name all assigned claims* in the event any defendant objected to or raised any defense regarding the assignment of all or part of any assigned claim, and *to pursue in its own name all or part of any claim that was not assignable*." Angulo Affidavit (DN 24-3) ¶ 4 (emphasis added).

An affidavit submitted after removal, however, cannot supersede the Complaint. It can only "clarify or amplify the claims actually alleged in the [pleading] that was controlling…." *Griggs v. State Farm Lloyds*, 181 F.3d 694, 700 (5th Cir. 1999); *see also Rhynard v. State Farm Ins.*, No. 9-10972-BC, 2009 WL 1580260, at *3 (E.D. Mich. June 3, 2009) ("Plaintiff's post-removal stipulation … does not remove the complaint from this Court's jurisdiction"); *Rogers v. Wal-Mart Stores*, 230 F.3d 868, 872 (6th Cir. 2000) ("[J]urisdiction is determined as of the time of removal."). Plaintiffs don't say what allegations the Angulo affidavit would clarify, and the relevant pleadings are pretty clear. *E.g.*, Complaint ¶ 120 ("have assigned their claims"). If anything, the motion to remand implicitly concedes that the affidavit contradicts the complaint: in urging the Court to "look beyond" the complaint, the motion repeatedly quotes caselaw on resolving "contested" fact issues. Remand Motion (DN 24) at 15. But those cases typically involve *defendants* contesting factual allegations against them. Here, however, the *plaintiffs* would like the Court to treat the affidavit as amending their own complaint's clear allegations. The plaintiffs' position therefore stands in some tension with caselaw requiring the Court to decide a remand motion based on the complaint at "the time of removal." *Rogers*, 230 F.3d at 872. Regardless, the Angulo affidavit is so carefully hedged that it would offer little help even on the assumption it somehow clarified, rather than contradicted, those clear allegations. At this juncture, no one has challenged the assignment—only

3

its jurisdictional effect.[2]  And the plaintiffs cite no principle or precedent that would treat an assignee as the real party in interest unless someone questioned the assignment, in which case the assignor would spring back as a real party in interest.

Plaintiffs nevertheless contend that damages related to the vehicle, legal fees, and abandonment in the related subrogation case remain Angulo and Guzman's to pursue.  Remand Motion at 13.  None furnishes Angulo and Guzman with a real interest *in this case*.  First, the Complaint does not seek damages for harm to the car.  Second, the legal fees that Angulo and Guzman incurred in the underlying state-court suit, to the extent they are recoverable in this one, are apparently part of the breach-of-contract claim against United Specialty, which "Angulo Transportation and Guzman have assigned ... to Cordes."  Complaint ¶ 120.  Nothing in the pleadings or affidavit explains why the Court should treat them differently than the other damages plaintiffs seek.  Third, the Complaint says nothing at all about a subrogation case or failure to defend it.  As with attorney fees, to the extent this requested relief is properly before the Court at all, it would fall under the breach-of-contract claim that Angulo and Guzman assigned.

Because Angulo and Guzman are not real parties in interest in the case, the Court must disregard their citizenship.[3]  This renders moot defendants' alternative fraudulent-joinder theory.  The Court had subject-matter jurisdiction based on the complete diversity between Cordes and the defendants at the time of removal, and therefore **denies the motion to remand (DN 24).**

## II.    Arthur J. Gallagher's Motion for Leave to File a Sur-Reply

Arthur J. Gallagher & Co. moves for leave to file a sur-reply opposing the motion to remand.  In light of the Court's denial of the motion, the Court **denies this motion (DN 47) as moot**.

## III.    United Specialty's Motion to Dismiss

United Specialty moved to dismiss only Angulo and Guzman's claims for lack of personal jurisdiction.  *See* United Specialty MTD (DN 6) at 1; FED. R. CIV. P. 12(b)(2).  Importantly, it does not seek dismissal of Cordes's claims, either on jurisdictional or pleading grounds.  *See* DN 1-3 at pp. 55–83 (state-court Answer to Cordes's claims).  Because Angulo and Guzman are nominal rather than real parties, and are not asserting any claims against United Specialty or any other defendant, the Court—on its own motion—dismisses them from this case.  Federal Rule of Civil

---

[2] The Defendants' answers preserved their right to challenge the assignment once they gain access to the agreement through discovery.  Even if they do, it's not clear why Cordes, as the real party in interest, couldn't or wouldn't defend that agreement.

[3] The Complaint contains four claims by Cordes in her individual capacity and nine claims by Cordes as assignee of Angulo Transportation and Guzman.  *See* Complaint ¶¶ 88–162.  All of Cordes's individual claims overlap with claims she brings as assignee.

Procedure 21 authorizes a court "[o]n motion or on its own," to "at any time, on just terms, add or drop a party." As the Sixth Circuit recognized in *Letherer v. Alger Group*, a "misjoinder of parties … frequently is declared because no relief is demanded from one or more of the parties joined as defendants." 328 F.3d 262, 267 (6th Cir. 2003) (quoting 7 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1683, 475–76 (3d ed. 2001), *overruled on other grounds by Blackburn v. Oaktree Cap. Mgmt.*, 511 F.3d 633 (6th Cir. 2008). "Pursuant to Rule 21," the court continued, "a court may exercise its discretion to 'drop a party from a lawsuit *sua sponte* whose presence no longer [a]ffects the issues being litigated.'" *Id.* (quotation omitted). For the reasons described above, the presence of Angulo Transportation and Guzman as parties in this litigation doesn't affect the issues in this case. So the Court exercises its discretion to dismiss them as plaintiffs. *Cf. Safeco Ins. Co. of Am. v. City of White House*, 36 F.3d 540, 545 (6th Cir. 1994) ("Rule 21 … permits a district court to retain diversity jurisdiction over a case by dropping a nondiverse party if that party's presence in the action is not required.").

Therefore the Court **denies as moot United Specialty's motion to dismiss Angulo Transportation's and Guzman's claims for lack of personal jurisdiction (DN 6).** Cordes's bad-faith and other claims against United Specialty, however, will continue.

## IV.   Arthur J. Gallagher's Motion to Dismiss

Gallagher, Angulo's insurance broker, moves to dismiss the three counts pending against it—negligence, breach of fiduciary duties, and fraud—for failure to state a claim. Gallagher MTD (DN 21-1) at 2. To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court must accept all factual allegations as true, but needn't accept "conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A negligence claim requires "(1) a duty on the part of the defendant; (2) a breach of that duty; and (3) consequent injury." *Mullins v. Commonwealth Life Ins. Co.*, 839 S.W.2d 245, 247 (Ky. 1992). Generally, "insurance brokers [such as Gallagher] and agents owe a standard duty of reasonable care to their clients." *Assoc. Ins. Serv., Inc. v. Garcia*, 307 S.W.3d 58, 63 (Ky. 2010).

But Cordes doesn't allege facts indicating Gallagher breached this duty. After Cordes filed suit in Marshall County, "Angulo Transportation provided the Complaint to its insurance broker, Gallagher, on March 26, 2020." Complaint ¶ 48. According to Cordes, Gallagher "failed to properly notify the proper entity of the suit" and "breached the only instruction [it] received from Angulo Transportation, which was to send it to the insurance company." Response to AJG MTD (DN 28) at 6–7. One day after receiving the complaint, Gallagher, "forwarded the Complaint to Vaccaro [a third-party administrator] and asked for an update." Complaint ¶ 49. At this point,

OneSource had taken over claims-handling from Vaccaro, a fact that Gallagher was "apparently unaware of." *Id.* Three days later, Texcaz responded to Vaccaro's clarification that it no longer administered claims by telling Gallagher that OneSource was now handling the claim. ¶ 53. Texcaz also said it had contacted OneSource and directed OneSource to update Gallagher on the claim. ¶¶ 54–55.

Even if Gallagher's duties included forwarding a complaint, Gallagher discharged that duty by doing what Cordes says it should've done: forwarding the complaint one day after receipt. Complaint ¶ 49. At the outset, insurance brokers are usually out of the picture after procuring the policy. *See* Gallagher MTD at 8 (citing *Trans-World-Marine, Inc. v. Bouffard Agency*, 885 F.2d 332, 334–35 (6th Cir. 1989) (broker's "only duty was to comply with its instructions" from principal to purchase a particular policy)); *Broker*, BLACK'S LAW Dictionary 221 (11th ed. 2019) (defining "insurance broker" as "[s]omeone who, for compensation, brings about or negotiates contracts of insurance as an agent for someone else"). Assuming Gallagher had some ongoing duty under Kentucky law, however, Gallagher discharged that duty based on Cordes's own allegations. Complaint ¶ 49. And by the time Gallagher realized that it had forwarded the complaint to the wrong entity—only four days after it received the complaint—Texcaz had already told the right adjuster (or "third-party administrator"), OneSource. ¶¶ 51–55.

What else was Gallagher supposed to do? It notified Vaccaro, the claims adjuster, and had no reason to again separately notify OneSource following Texcaz's communication stating that it had informed OneSource. Nor is it apparent how any of this injured Angulo Transportation or Cordes.

As to the remaining claims for breach of fiduciary duty and fraud, Cordes concedes that Gallagher is not a fiduciary and that she has not alleged fraud with particularity and lacked any factual basis to pursue these claims, at least before discovery. Response to AJG MTD (DN 28) at 8. So the Court **grants Gallagher's motion to dismiss (DN 21).**

## V.    OneSource's Motion for Judgment on the Pleadings

Cordes asserts multiple claims against OneSource, a third-party administrator, for statutory and common-law bad faith, violating KRS § 304.12-235, breaching the common law duty to settle, breaching fiduciary duties, negligence, and fraud. OneSource moves for judgment on the pleadings on the basis that it has no contractual obligation to pay insurance claims as a non-insurer. OneSource MJOP (DN 8-1) at 1. The Court reviews a motion for judgment on the pleadings under Rule 12(c) under the same standards that apply to a 12(b)(6) motion. *Bates v. Green Farms Condo.Ass'n*, 958 F.3d 470, 480 (6th Cir. 2020). The familiar standard of *Twombly* and *Iqbal* apply, so the Court accepts as true "all well-pleaded factual allegations" but not "legal conclusions." *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## A. Statutory and Common-Law Bad Faith

OneSource contends it is not liable under the Kentucky Unfair Claims Settlement Practices Act (KRS § 304.12-230) because the KUCSPA applies only to insurers or those who enter insurance contracts, not third-party administrators like OneSource.

The KUCSPA prohibits "any person" from engaging in an "unfair claims settlement practice." KRS § 304.12-230. The Insurance Code defines "person" as "an individual, insurer, company, association, organization, Lloyd's insurer, society, reciprocal insurer or inter-insurance exchange, partnership, syndicate, business trust or corporation, and every other related legal entity." KRS § 304.1-020. The Kentucky Supreme Court has interpreted this definition more narrowly than the ordinary meaning those terms might bear. In *Davidson v. American Freightways*, the Commonwealth's high court held that "every other related legal entity" refers only to those "engaged in the business of insurance." 25 S.W.3d 94, 98 (Ky. 2000). This is consistent, the *Davidson* Court explained, with the definitions of "insurance" and "insurer" in the Code. *Id.* (citing KRS §§ 304.1-030, 304.1-040. An entity is "engaged in the business of insurance," the court held, when it enters "a *contract* whereby one undertakes to pay or indemnify another as to loss from certain specified contingencies or perils called 'risks.'" *Id.* (quoting KRS § 304.1-030). And absent a "contractual obligation to pay" on the part of a defendant, a plaintiff has "no statutory or common law basis for a bad faith claim." *Id.* at 100.

Construed in the light most favorable to Cordes, the pleadings do not allege that OneSource has any "contractual obligation to pay" the plaintiffs. As OneSource notes, Cordes alleges a breach-of-contract claim against only United Specialty. *See* Complaint ¶¶ 119–124. The Complaint alleges that "*United Specialty* [not OneSource] retained its duty to properly administrate and pay the claim, and its delegation to a third-party administrato[r] did not relieve *United Specialty* of this duty." ¶ 93 (emphasis added). And the Complaint doesn't allege any other contract in which OneSource undertook such a duty. Without such an obligation, the statutory and common-law bad-faith claims fail. *See Prout v. PRG Real Estate Mgmt.*, 51 F. Supp. 3d 702, 705 (E.D. Ky. Oct. 9, 2014) (granting summary judgment to claims administrator that lacked a contractual obligation to pay).

Cordes resists the stinginess of the Kentucky Supreme Court's interpretation of the KUCSPA, but cites no precedent offering a broader construction of the statute or a narrower scope of the *Davidson* decision. The legislature's decision to define "person" to include "every other related entity" could easily, she explains, include third-party administrators, who are surely "related" to the insurance companies for whom they process claims. Response to OneSource MJOP (DN 22) at 4. But *Davidson* forecloses this argument: the scope of "person" turns on whether that entity has entered into insurance contracts. 25 S.W.3d at 98. This Court, sitting in diversity, may not second-guess the Kentucky Supreme Court's interpretation of

Kentucky law. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78–79 (1938); *Stalbosky v. Belew*, 205 F.3d 890, 893–94 (6th Cir. 2000). The Court therefore must decline Cordes' invitation to restrict *Davidson* to the self-insurance context and "liberally construe" the KUCSPA. Response to OneSource MJOP at 8. Many decisions have persuasively explained that *Davidson*'s interpretation of the KUCSPA clearly "extends to situations beyond self-insureds or uninsureds." *Madison v. Nationwide Mut. Ins. Co.*, No. 1:11-cv-157, 2012 WL 692598, at *2–3 (W.D. Ky. Mar. 2, 2012) (collecting cases).

Bad-faith claims generally don't run against third-party administrators in light of *Davidson*. "[T]his Court and others have found that *Davidson* forecloses any bad faith actions against adjusters, absent privity." *Ring's Crossroads Market v. Cincinnati Ins.*, No. 1:14–cv–105, 2015 WL 4624252, at *3 (W.D. Ky. Aug. 3, 2015) (collecting cases). The Kentucky caselaw that Cordes cites is consistent with this principle. *See* Response to OneSource MJOP at 5. In *Kentucky Associated General Contractors Self-Insurance Fund v. Lowther*, the Kentucky Supreme Court did not directly address whether the KUCSPA applies to third-party administrators and instead decided a separate question of statutory law. *See* 330 S.W.3d 456, 460–61 (Ky. 2010). And in *Quality Signs & Services v. Westfield Companies*, the court held the third-party administrator did in fact have a contractual agreement with the insurer to "perform activities governed by" the KUCSPA. No. 2-ci-1396, 2004 WL 1047914, at *4 (Cir. Ct. Ky. Feb. 16, 2004). That dispute stemmed from the third-party administrator's "investigation and coverage determination," including the administrator's decision "on behalf [of the insurer]" to deny coverage. *Id.* at *4–5. Cordes has not shown that OneSource owes such a contractual obligation here.

To be clear, *Davidson*'s rule applies equally to common-law bad-faith claims. *Contra* Response to OneSource MJOP at 7–8. *Davidson* unequivocally held that the defendant "was under no contractual obligation to pay the [plaintiffs'] claims; thus, there exists no statutory *or common law* basis for a bad faith claim against it." 25 S.W.3d at 100 (emphasis added). And *Indiana Insurance Company v. Demetre*, which Cordes also relies on, supports the Court's interpretation: "As the *Davidson* court noted, Justice Leibson … established a *test applicable to all bad faith actions*, whether first-party or third-party claims and whether based *on common law or statute*." 527 S.W.3d 12, 26 (Ky. 2017) (emphasis added; quotation marks and citation omitted). In common law as in statutory bad-faith claims, "the insurer must be obligated to pay the claim under the terms of the policy." *Id.* (quoting *Davidson*, 25, S.W.3d at 100).

## B. KRS 304.12-235

The same reasoning and precedent defeats Cordes's claim that OneSource failed to make an offer "not more than thirty (30) days" after Cordes submitted her claim. KRS § 304.12-235; Complaint ¶¶ 104–106. On the basis of § 304.12-235, she sought interest "at the rate of twelve percent (12%) per annum from and after the expiration of the thirty (30) day period" and attorneys' fees under KRS § 304.12-235.

Complaint ¶¶ 105–06.  Cordes now concedes that this section applies to only insurers and doesn't oppose dismissal.  Response to OneSource MJOP at 5 n.2.

Her concession is well taken.  By its own text, this provision applies when "an *insurer* fails to make a good faith attempt to settle a claim."  KRS § 304.12-235(2) (emphasis added).  As discussed above, OneSource is not an "insurer" within the meaning of the Insurance Code.  And "it would be counterintuitive" for a claims administrator to be "individually liable under K.R.S. § 304.12-235 but not K.R.S. § 304.12-230."  *Wolfe v. State Farm Fire & Cas. Co.*, No. 3:10-cv-545, 2010 WL 4930680, at *3 (W.D. Ky. Nov. 30, 2010).

The Kentucky Court of Appeals has applied similar consistency in interpreting related statutory terms across the Insurance Code.  "We see no reason that a different definition of claim would be applicable in KRS 304.12-235 than in KRS 304.12-230, as the two statutes are part of the same legislative scheme."  *Hamilton Mut. Ins. Co. of Cincinnati v. Barnett*, No. 2007-ca-29-mr, 2008 WL 3162321, at *5 (Ky. Ct. App. Aug. 8, 2008).  And nothing indicates that the Kentucky Supreme Court would adopt a different interpretation here.  *See In re Dow Corning Corp.*, 419 F.3d 543, 549 (6th Cir. 2005) ("Intermediate state appellate courts' decisions are also viewed as persuasive unless it is shown that the state's highest court would decide the issue differently.").

### C. Common-Law Duty to Settle

The Complaint also asserts that OneSource breached a duty to settle under Kentucky common law.  Complaint ¶ 111–118.  This claim, however, is legally equivalent to a common-law bad-faith claim.  A "common law third-party bad faith" claim includes claims that "a liability insurer fail[ed] to settle a tort claim against its insured."  *Foster v. Am. Fire & Casualty Co.*, 219 F. Supp. 3d 590, 594 (E.D. Ky. 2016).

Cordes appears to recognize this equivalence.  She repeatedly refers to her claim as "the common law tort of bad faith" and "common law bad faith."  Response to OneSource MJOP at 11.  And the caselaw she relies on, *State Farm Mutual Automobile Insurance Company v. Marcum*, addresses "bad faith in failing to settle," not breach of some separate duty to settle distinct from an insurer's duty to act in good faith.  420 S.W.2d 113, 114 (Ky. 1967), *overruled on other grounds by Manchester Ins. & Indem. Co. v. Gundy*, 531 S.W.2d 493, 497 (Ky. Ct. App. 1975).  Cordes has offered no caselaw indicating Kentucky law recognizes a separate duty to settle.

### D. Breach of Fiduciary Duty

A fiduciary relationship under Kentucky law is "founded on trust or confidence reposed by one person in the integrity and fidelity of another and which also necessarily involves an undertaking in which a duty is created in one person to act primarily for another's benefit in matters connected with such undertaking." *Steelvest, Inc. v. Scansteel Serv. Center, Inc.*, 807 S.W.2d 476, 485 (Ky. 1991).

Forming a fiduciary relationship requires more than the ordinary "element of confidence and trust" present in "[e]very contract." *Ballard v. 1400 Willow Council of Co-Owners, Inc.*, 430 S.W.3d 229, 242 (Ky. 2013) (quotation omitted)). The critical inquiry is whether the "conduct or undertaking of the purported fiduciary" indicates that it "has expressly undertaken to act for the *plaintiff's primary benefit.*" *Flegles, Inc. v. TruServ Corp.*, 289 S.W.3d 544, 552 (Ky. 2009) (emphasis added). Cordes alleges OneSource breached its fiduciary duties by failing to provide a legal defense to Angulo and Guzman in state court and failing to make a reasonable offer to Cordes. Complaint ¶¶ 125–130. According to the Complaint, "Angulo Transportation and Guzman relied on and trusted Defendants to manage its legal affairs in response to Cordes's claims." ¶ 128.

But the Complaint never alleges any non-conclusory facts indicating when or how OneSource became a fiduciary of Angulo or Guzman. Instead it explains that "Angulo Transportation and Guzman were covered under a policy of insurance with Defendant United Specialty," not OneSource. ¶ 13. The extent of OneSource's role, even according to the Complaint, was to process claims on behalf of United Specialty. ¶ 27, 53. At no point did OneSource contract with Angulo Transportation, Guzman, or Cordes, or otherwise assume a duty "to act primarily" for their "benefit." *Steelvest*, 807 S.W.2d at 485.

Cordes relies on two decisions to contend that OneSource owed a fiduciary duty to Angulo and Guzman. Response to OneSource MJOP at 20 (citing *Marcum*, 420 S.W.2d at 120, and *Curry v. Fireman's Fund Ins. Co.*, 784 S.W.2d 176, 178 (Ky. 1989)). Neither precedent establishes that Kentucky law would treat OneSource as a fiduciary. Both involve bad-faith claims, and neither equates bad-faith conduct with fiduciary duty. In *Marcum*, the Kentucky Court of Appeals explained that an insurer must adhere "to a standard higher than that of an unskilled practitioner" and "must not abuse the power it has to negotiate and make settlements." 420 S.W.2d at 120. These are "standards regarding *bad faith*" that the trial court had properly explained to the jury in the view of the Court of Appeals. *Id.* *Curry* is similar: the Kentucky Supreme Court affirmed a jury verdict and explained "the desirability of permitting recovery in tort when an insurance company acts in *bad faith* in dealing with its own insured." 784 S.W.2d at 178. Cordes has not shown any likelihood that Kentucky courts would hold that "fiduciary duties owed to a policy holder" by an insurance company would creep up, like some invasive vine, to grasp a claims administrator as well. *Ind. Ins. Co. v. Demetre*, 527 S.W.3d 12, 33 (Ky. 2017).

## E. Negligence

OneSource "had a duty to protect Angulo Transportation and Guzman," according to Cordes, that it breached by "negligent[ly]" handling the claims. Complaint ¶¶ 133, 135. As a result, Angulo and Guzman suffered an injury because "a judgment has been entered" against them. ¶ 136.

10

This analysis begins, and ultimately ends, with whether OneSource had a duty to protect Angulo or Guzman. *Mullins*, 839 S.W.2d at 247. Contrary to OneSource's assertion, Kentucky law doesn't categorically preclude a negligence action in this context. *See R.H. ex rel. Gunter v. Buffin*, No. 14-cv-150, 2014 WL 7272757, at *2–3 (E.D. Ky. Dec. 18, 2014) (Kentucky law allows tort claims against insurance companies and adjusters "without relying on the bad-faith standard") (collecting cases). The question is whether, under the facts plaintiffs allege, OneSource assumed any duties to Angulo or Guzman.

Based on the Complaint, it has not. OneSource allegedly communicated with Angulo or Gumzan only in its capacity as a third-party administrator. *See* Complaint ¶¶ 24–44. A breach arising from that conduct might violate a contractual duty owed United Specialty or perhaps Texcaz, but would not give Angulo or Guzman (or their assignee Cordes) a right of action against OneSource. *See Presnell Constr. Managers, Inc. v. EH Constr.*, LLC, 134 S.W.3d 575, 579–80 (Ky. 2004) ("[O]ne who is not a party to the contract or in privity thereto may not maintain an action for negligence which consists merely in the breach of the contract." (quotation omitted)). And the Complaint doesn't allege any facts indicating OneSource assumed extra-contractual duties. *Contra Fulton County v. Underwriters Safety & Claims, Inc.*, No. 5:18-cv-138, 2019 WL 97080, at *4 (W.D. Ky. Jan. 3, 2019) (reasonable basis for negligence claim against insurance adjuster where adjuster assumed responsibilities beyond scope of the Claims Services Agreement). So judgment on the pleadings is appropriate here. *See Ring's Crossroads Market*, 2015 WL 4624252, at *3–4 (granting judgment on the pleadings to an insurance adjuster on negligence claim because the plaintiff failed to identify a duty under Kentucky law).

Cordes analogizes this case to fraud or negligent-misrepresentation actions against insurance companies. *See* Response to OneSource MJOP at 22. None is directly on point, but these decisions reinforce the general notion that defendants must take some action to incur a duty to the insured. *Mullins*, for instance, holds that an insurance agent may assume a duty of care to the insured when "(1) the insured pays the insurance agent consideration beyond a mere payment of the premium, (2) there is a course of dealing over an extended period of time which would put an objectively reasonable insurance agent on notice that his advice is being sought and relied on, or (3) the insured clearly makes a request for advice." 839 S.W.2d at 248 (internal citations omitted). OneSource's communications with Angulo don't indicate any such extra-contractual relationship between the insured and the third-party administrator.

And Cordes's other precedents don't reflect a duty borne by a third-party administrator like OneSource. In *J.D. ex rel. De Giovanni v. Riley*, the Eastern District of Kentucky explained that "bad faith is not the *only* standard of care applicable to the insurance industry." No. 5:14-cv-409, 2015 WL 1222288, at *4 (E.D. Ky. Mar. 17, 2015); Response to OneSource MJOP at 22 (quoting the same). True enough. *De Giovanni*, however, examined whether the plaintiff had a negligence

11

claim against an insurance adjuster who failed to inform the parent of two minor children that the settlement with the children required court approval. 2015 WL 1222288 at *1–2. The essence of the complaint here, by contrast, is that OneSource mishandled the claim. Complaint ¶ 135 ("Defendants' sloppy, haphazard, and careless handling of the Cordes claim was negligent, and breached their duty to protect Angulo Transportation and Guzman."). But sloppy claim-handling would breach (if anything) a contractual duty to the insurer, United Specialty, not to United's insured, Angulo Transportation. *Presnell Constr. Managers*, 134 S.W.3d at 579–80. The complaint doesn't allege facts that approach the circumstances in *De Giovanni*. Absent factual allegations supporting a separate duty to the insured, this negligence claim fails.

### F. Fraud by Misrepresentation or Omission

Cordes admits that she cannot plead her fraud claim against OneSource with particularity. Response to OneSource MJOP at 23 ("Plaintiffs cannot currently plead the representation made from OneSource to the carrier, and—as a result—Plaintiffs cannot plead OneSource's fraud with particularity."); *see also* FED. R. CIV. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). Accordingly, the Court must dismiss this claim.

\* \* \*

Because the Complaint fails to state any claims against OneSource, the demand for punitive damages fails as well. *See Salisbury v. Purdue Pharma, L.P.*, 166 F.Supp.2d 546, 548 n.1 (E.D. Ky. 2001) (claim for punitive damages "is not a separate cause of action"). Accordingly, the Court **grants OneSource's motion for judgment on the pleadings (DN 8).**

## VI.  Texcaz's Motion for Judgment on the Pleadings

Texcaz also moves for judgment on the pleadings, Texcaz MJOP (DN 26), under the same pleading standard applied above, *Bates*, 958 F.3d at 480. The Complaint raises the same claims against Texcaz as it did against OneSource. Cordes concedes, however, that KRS § 304.12-235 does not reach a general managing underwriter like Texcaz. Response to Texcaz MJOP (DN 40) at 6 n.2. And as discussed above, her claim asserting a common-law duty to settle is equivalent to a common-law bad-faith claim, *see Foster*, 219 F. Supp. 3d at 594, and fails for the same reason.

### A. Statutory and Common-Law Bad Faith

Texcaz was the "managing general underwriter" and contracted with Vaccaro and OneSource for third-party administration of claims insured by United Specialty. Complaint ¶ 14; Texcaz MJOP at 3. According to Texcaz, it did not make decisions about "whether to accept or deny claims" and "never was in privity of contract with

any of the Plaintiffs." *Id.* Cordes doesn't dispute that no plaintiff agreed to any contract with Texcaz. Response to Texcaz MJOP (DN 40) at 10 ("Texcaz did not have a direct contract with Angulo Transportation"). Nevertheless, Texcaz is liable under the KUSCPA, she argues, because it "acted on behalf of United Specialty to direct and control OneSource with respect to adjusting, and handling the defense of, the claims brought against Angulo Transportation." *Id.* at 5. According to Cordes, Kentucky law doesn't require contractual privity for bad-faith claims and, alternatively, the "contractual agreement between Texcaz and United Specialty" functionally "placed Texcaz in contractual privity with the Plaintiff." *Id.*

Cordes's first argument fails for the same reason discussed above: Kentucky law plainly requires "a contractual obligation," not just some level of control in the claims handling. *Davidson*, 25 S.W.3d at 100. Cordes points out that privity never exists between a third-party victim and a tortfeasor's insurer. *See* Response to Texcaz MJOP at 14. This is beside the point. The question isn't privity between the plaintiff and the defendant; rather it is the "*contractual[] obligat[ion]* to pay" a claim, whether to "an insured or a third-party." *Davidson*, 25 S.W.3d at 100 (emphasis in original); *see also Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993) ("insurer must be obligated to pay the claim under the terms of a policy" (quotation omitted)). And the clear answer to that question, according to the Complaint itself, is again that "United Specialty," not Texcaz, "retained its duty to … pay the claim." ¶ 93. By contrast, the Complaint says nothing about any contractual obligation of Texcaz (or any other third-party administrator) to pay this insurance claim.

The response brief argues for the first time that Texcaz "acted to carry out United Specialty's contractual obligations" allegedly "pursuant to a contractual agreement between Texcaz and United Specialty." Response to Texcaz MJOP at 5. Because Texcaz "apparently oversaw and directed the TPA," according to Cordes, it faces the same liability as an insurer. Response to Texcaz MJOP at 7–8. The plaintiffs appear now to presume that a contract between Texcaz and United Specialty exists, but they didn't actually allege that. *See* Complaint ¶ 93 ("United Specialty retained its duty to properly administrate and pay the claim, and its delegation to a third-party administrato[r] did not relieve United Specialty of this duty."). Parties can't use an opposition brief to "ask the court to consider new allegations (or evidence) not contained in the complaint." *Bates*, 958 F.3d at 483. Notably, the proposed amended complaint changes none of the relevant allegations. It fails to allege any contractual obligation to pay and continues to maintain that United Specialty "retained" its duty to "pay the claim." Proposed Amended Complaint (DN 23-1) ¶ 103. So the proposed amendment would have no effect on this analysis. Taking the facts pled as true, Texcaz cannot be liable for bad faith under the KUCSPA or common law.

### B. Breach of Fiduciary Duty

Cordes offers two theories regarding why Texcaz is a fiduciary.  Neither is enough to make a fiduciary of an underwriter.

First, Texcaz allegedly "assumed such a relationship when it contracted to undertake United Specialty's duties to adjust and defend."  Response to Texcaz MJOP at 20.  A fiduciary duty requires greater "confidence and trust" than that present in all contractual relationships.  *Ballard*, 430 S.W.3d at 242 (quotation omitted).  Courts look to any "conduct or undertaking of the purported fiduciary" indicating that it "has expressly undertaken to act for the *plaintiff's primary benefit*."  *Flegles*, 289 S.W.3d at 552 (emphasis added).  Texcaz's contract with United Specialty may indicate that Texcaz would act for the *insurer's* primary benefit, but says nothing about Texcaz assuming such duties to Angulo Transportation or Cordes.

Second, the plaintiffs say Texcaz "placed itself in a position of trust" when it "specifically represented to Angulo Transportation's agent that it had directed OneSource to handle the matter."  Response to Texcaz MJOP at 20; Complaint ¶ 53.  That did not indicate that Texcaz had "undertaken to act" for Angulo or Guzman's benefit.  *Flegles*, 289 S.W. 3d at 552.  That Texcaz "removed Angulo Transportation from the email chain when it sent the March 30, 2020 email," Complaint ¶ 56, indicates that Texcaz was merely conveying information to Gallagher and *not* acting on Angulo's behalf.  So the pleadings indicate no fiduciary duties that Texcaz owed Angulo Transportation, Guzman, or Cordes.

### C. Negligence

According to Cordes, Texcaz (like OneSource) "had a duty to protect Angulo Transportation and Guzman."  Complaint ¶ 133.  This "conclusory statement" goes nowhere without factual support, which the Complaint lacks entirely.  *Iqbal*, 556 U.S. at 678.  The allegations in the Complaint indicate that Texcaz's first involvement concerned an email from Vaccaro telling Gallagher that Vaccaro was no longer administering claims for United Specialty.  Complaint ¶¶ 50, 52.  Texcaz then removed Angulo Transportation from that email thread and told Gallagher that OneSource was the new administrator.  ¶¶ 53, 56.  As far as the Complaint indicates, Texcaz never contracted or communicated with Angulo Transportation, Guzman, or Cordes.  Nothing about the allegations would support a duty owed by Texcaz to the plaintiffs.

Cordes cites caselaw suggesting that Kentucky recognizes a universal duty of care to prevent foreseeable injury.  Response to Texcaz MJOP at 21 (quoting and citing *Kendall v. Godbey*, 537 S.W.3d 326, 331 (Ky. Ct. App. 2017)); *accord Lee v. Farmer's Rural Elec. Co-op Corp.*, 245 S.W.3d 209, 212 (Ky. Ct. App. 2007); *Greyhound Corp. v. White*, 323 S.W.2d 578, 582 (Ky. Ct. App. 1958).  But this universal duty doesn't displace the usual analysis of whether a defendant owed a

14

plaintiff a duty. Consideration of this "duty to all," the Kentucky Supreme Court explained, "is a beginning point for any duty analysis." *Fryman v. Harrison*, 896 S.W.2d 908, 909 (Ky. 1995) (internal quotation omitted). But it's certainly not the end: "The examination must be focused so as to determine whether a duty is owed, and consideration must be given to public policy, statutory and common law theories in order to determine *whether a duty existed in a particular situation*." *Id.* (emphasis added). The pleadings simply and blandly state that Texcaz owed a "duty to protect" Angulo Transportation and Guzman. They don't identify anything in particular that the law required Texcaz to do differently for the plaintiffs' benefit.

### D. Fraud by Misrepresentation or Omission

Cordes claims Texcaz "led Angulo Transportation and Guzman to believe that [Defendants] would ensure a legal defense." Complaint ¶ 139. Angulo and Guzman "did not retain their own legal counsel as a result" and "suffered" because a default judgment was entered against them. ¶¶ 141–42.

Fraud by misrepresentation and fraud by omission are separate torts. Under Kentucky law, fraud by misrepresentation requires "clear and convincing evidence" of "a) [a] material representation b) which is false c) known to be false or made recklessly d) made with inducement to be acted upon e) acted in reliance thereon and f) causing injury." *United Parcel Serv. Co. v. Rickert*, 996 S.W.2d 464, 468 (Ky. 1999). Fraud by omission, in contrast, "is grounded in a duty to disclose." *Giddings v. Lewis, Inc. v. Industrial Risk Insurers*, 348 S.W.3d 729, 747 (Ky. 2011). It requires that "(1) the defendant had a duty to disclose the material fact at issue; (2) the defendant failed to disclose the fact; (3) the defendant's failure to disclose the material fact induced the plaintiff to act; and (4) the plaintiff suffered actual damages as a consequence." *Id.*

At the pleading stage, Federal Rule of Civil Procedure 9 requires the plaintiff to "state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). "Malice, intent, knowledge, and other conditions of a person's mind," however, "may be alleged generally." *Id.*

Although Cordes styles this claim as both fraud by misrepresentation and omission, the Court construes it as a fraud-by-misrepresentation claim because the Complaint alleges a statement that was made rather than a failure to disclose.[4] Construed in the light most favorable to Cordes, the Complaint fails to allege that

---

[4] In any case, the Complaint fails to state a fraud-by-omission claim because it doesn't plead "(1) precisely what was omitted; (2) who should have made a representation; (3) the content of the alleged omission and the manner in which the omission was misleading; and (4) what [Defendants] obtained as a consequence of the alleged fraud." *Republic Bank & Trust co. v. Bear Stearns & Co., Inc.*, 683 F.3d 239, 256 (6th Cir. 2012).

any representation from Texcaz was false or that Texcaz had either knowledge or reckless disregard of falsity:

> 50. Vaccaro replied later that day that it no longer handled claims for United Specialty.

> 51. This was the first time that Angulo Transportation learned that United Specialty no longer used Vaccaro.

> 52. Vaccaro copied TEXCAZ on the reply to Gallagher.

> 53. On March 30, 2020, TEXCAZ informed Gallagher that OneSource was handling the claim.

> 54. TEXCAZ added that it contacted the claims adjusters, Rocio Zaragoza and Humberto Ayala.

> 55. TEXCAZ also informed Gallagher that it had directed Zaragoza and Ayala to contact Gallagher with an update on the claim.

> 56. For reasons unknown, TEXCAZ removed Angulo Transportation from the email chain when it sent the March 30, 2020 email.

> 57. As a result, TEXCAZ did not inform Angulo Transportation that OneSource was handling the claim.[5]

> 72. In fact, Michael Gonzalez for OneSource provided a false and misleading affidavit. In the affidavit, Gonzalez falsely claimed that OneSource "was unaware of the lawsuit" until September 16, 2020.

> 73. To the contrary, Plaintiffs' counsel informed OneSource of the suit on December 31, 2019, TEXCAZ had informed OneSource of the suit on or about March 30, 2020 and the Marshall County Circuit Court gave OneSource notice before the June 2020 hearing.

Complaint at 6–8.

Cordes argues that Texcaz's statement to Gallagher that Texcaz had contacted two adjusters at OneSource about the claim and directed them to follow up with Gallagher, ¶¶ 53–55, was false because OneSource had done "absolutely nothing" to handle the claim, Response to Texcaz MJOP at 23. But a lack of follow-up wouldn't necessarily render the statement false: OneSource *was* handling the claim in the sense that it was the new third-party administrator for United Specialty, a fact that

---

[5] To the extent ¶ 57 might on its face be construed as an alleged fraudulent omission, the Complaint and briefs don't describe it that way. The only mention of an omission appears in the label of a subsection, not in any factual allegations or legal argument.

Cordes doesn't dispute.  The Complaint necessarily interprets "handling" to mean "actively processing," and disputes that characterization.  Even if that is enough to allege falsity, however, it would fail to show Texcaz knew of the falsity or acted with reckless disregard of the truth.  Cordes all but admits she cannot allege falsity against Texcaz, explaining that "it is unknown which defendant, Texcaz or OneSource, is telling the truth, so Plaintiffs have sued both as they are entitled to do so."  *Id.* at 24. Without pleading the required mental state and stating with "particularity" why the statement is false, Cordes fails to state a claim.  FED. R. CIV. P. 9(b).

\* \* \*

Because the Complaint fails to state any claims against Texcaz, the demand for punitive damages fails as well.  *See Salisbury*, 166 F. Supp. 2d at 548 n.1. Accordingly, the Court **grants Texcaz's motion for judgment on the pleadings (DN 26).**

## VII.   Vaccaro's Motion for Judgment on the Pleadings

Before OneSource took over claims administration, Vaccaro adjusted claims for United Specialty.  Complaint ¶¶ 16–18.  Like OneSource, it moves for judgment on the pleadings on the grounds that it is a non-insurer that is not liable for bad faith and that Cordes otherwise fails to state a plausible claim.  Vaccaro MJOP (DN 49) at 1–2.  Cordes concedes dismissal of the claim under KRS § 304.12-235 is appropriate. Response to Vaccaro MJOP (DN 50) at 4 n.2.  As above, the claim that Vaccaro breached a common-law duty to settle is redundant with her common-law bad-faith claim.  *See Foster*, 219 F. Supp. 3d at 594.  Cordes concedes that she hasn't pled a fraud claim with particularity, as required by Rule 9.  Response to Vaccaro MJOP at 22.  And for the reasons discussed below, her bad-faith, fiduciary-duty, and negligence claims likewise fail.

### A.   Statutory and Common-Law Bad Faith

Cordes fails to state a bad-faith claim against Vaccaro because, as discussed above, Vaccaro has no "contractual obligation to pay" the claim at issue.  *Davidson*, 25 S.W.3d at 100.  Under authoritative Kentucky caselaw, this leaves "no statutory or common law basis for a bad faith claim."  *Id.*  The Complaint does allege that Vaccaro had an obligation to handle claims on behalf of United Specialty, *see* ¶ 16, but that differs from an obligation to *pay* those claims, which United Specialty retained, ¶ 93.  So the bad-faith claims fail.

### B.   Breach of Fiduciary Duty

Nowhere does the Complaint explain what facts render Vaccaro a fiduciary. Indeed, the allegations suggest the opposite: a fiduciary acts "for the plaintiff's primary benefit," *Flegles*, 289 S.W.3d at 552, whereas Vaccaro "handle[d] the claim for United Specialty," Complaint ¶ 16.  Because the Complaint doesn't plead any

17

duties that Vaccaro undertook, it necessarily fails to state a claim for breach of any such duties.

### C. Negligence

Did Vaccaro assume and breach a "duty to protect" Angulo and Guzman in the time that it administered the claim?  Complaint ¶ 133.  Nothing suggests such a duty exists, and Cordes has supplied no caselaw explaining the duties that third-party administrators owe the insured.  Even assuming such a duty exists, Vaccaro did not breach it.  The plaintiffs "sent a demand to Vaccaro for policy limits with all necessary records" on August 13, 2019.  ¶ 19.  Vaccaro requested MRI films, which the plaintiffs handed over on September 5, 2019.  ¶ 23.  About two weeks later, Vaccaro forwarded the records to OneSource, which took over the claim administration.  ¶ 25.  In the one month when Vaccaro administered the claim, the Complaint says it needed to review "the police report, medical records, past medical bills that already exceeded $300,000 at that time, a cost projection that exceeded $900,000 for future medical care, past wage loss that exceeded $60,000, and a projection that exceeded $850,000 for future wage loss." ¶ 20.  Plaintiffs never say what Vaccaro should've done differently or why one month was not a reasonable amount of time to spend reviewing Cordes's documents.

**\* \* \***

Without a valid claim, the demand for punitive damages fails as well.  *See Salisbury*, 166 F. Supp. 2d at 548 n.1.  The Court **grants Vaccaro's motion for judgment on the pleadings (DN 49).**

### VIII.  Plaintiffs' Motion to Amend the Complaint

Contemporaneously with their motion to remand, the Plaintiffs also moved for leave to file an amended complaint that they say "clarifies the scope of the assignment and the damages that are unique to Angulo Transportation and Jaime Guzman." Motion to Amend (DN 23) at 1.  A party may amend its pleading "as a matter of course within 21 days after serving it, or … 21 days after service of a responsive pleading." FED. R. CIV. P. 15(a)(1).  Outside that window, the party may amend "only with the opposing party's written consent or the court's leave."  FED. R. CIV. P. 15(a)(2). Though courts "should freely give leave when justice so requires," *id.*, leave to amend "should be denied if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile," *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995).  An amendment "is futile when the proposed amendment would not permit the complaint to survive a motion to dismiss." *Miller v. Calhoun County*, 408 F.3d 803, 817 (6th Cir. 2005).

All defendants oppose amendment, and more than 21 days have passed since service.  *See* DNs 32, 33, 35, 36, 38.  So Cordes may only amend with permission. The Court denies that permission on futility grounds.  The proposed amendments

explain the extent of Angulo and Guzman's interests and what they may do under the assignment. *See* Proposed Amended Complaint (DN 23-1) ¶¶ 67, 87–88, 91–97, 121, 130, 142, 148, 154, 161, 165, 170. This doesn't affect the outcome of the remand motion, which depends on "the plaintiff's complaint, as it is stated at the time of removal." *Gentek Bldg. Prods.*, 491 F.3d at 330; *see also Hagyard-Davidson-McGee Assocs., PLLC v. Fed. Ins. Co.*, No: 5:20-cv-171, 2021 WL 4130504, at *3 (E.D. Ky. Sept. 9, 2021) (Because "the Amended Complaint was filed after Removal," the court will not consider "additional claims … nor the clarifying facts"). So the Court cannot consider *newly pled* allegations in determining remand.

But the Plaintiffs say the amended complaint only "clarifies" the claims and interests of Angulo Transportation and Guzman as of the time of removal. Motion to Amend at 1. Clarifying existing allegations, as opposed to concocting new allegations, is permissible. *See Heyman v. Lincoln Nat'l Life Ins. Co.*, 781 F. App'x 463, 469–70 (6th Cir. 2019). This usually arises when courts must determine the amount in controversy. In Kentucky, the need for clarification often stems from Kentucky Rule of Civil Procedure 8.01(2), which forbids complaints from "recit[ing] any sum as alleged damages" if the lawsuit seeks "unliquidated damages." When defendants remove from Kentucky state courts, federal judges will treat "specific information about the amount in controversy" provided "for the first time" in federal court as "a clarification rather than a change." *Egan v. Premier Scales & Sys.*, 237 F. Supp. 2d 774, 778 (W.D. Ky. 2002). Even so, federal courts "disfavo[r]" attempts to "reduce or change" the amount in controversy solely to avoid federal jurisdiction. *Stephenson v. Seedbach & Co., LLC*, No. 1:20-cv-139, 2021 WL 707659, at *1–2 (W.D. Ky. Feb. 23, 2021) (quotation omitted).

The allegations contained in the proposed amended complaint wouldn't clarify anything in the original complaint, whose factual allegation about the assignment's scope is plenty clear: "Cordes offered to not collect the judgment directly from Angulo Transportation or Guzman beyond the limits of their insurance coverage if they would assign all claims against Defendants to Cordes." Complaint ¶ 80. The amended complaint adds only two caveats:

> 87. As part of that agreement, Angulo Transportation has agreed to participate in the pursuit of the assigned claims, to pursue in its own name all assigned claims in the event any defendant objected to or raised any defense regarding the assignment of all or part of any assigned claim, and to pursue in its own name all or part of any claim that was not assignable.

> 88. Angulo Transportation retains the right to pursue coverage claims to enforce its right to a legal defense and prevent future financial losses arising from the collision that are not assignable to Marcellina Cordes.

Amended Complaint (DN 23-1) at 9.

As to the first caveat, to the extent that this paragraph contradicts the original statement that Angulo Transportation and Guzman assigned "all claims," this would change, rather than clarify, the operative complaint.  To the extent they merely clarify the original pleading, that still wouldn't divest the Court of jurisdiction. Angulo Transportation's agreement "to pursue in its own name all assigned claims" speaks only to litigation—apparently on Cordes's behalf even if in Angulo's name. That doesn't purport to change the scope of the assignment, and sounds an awful lot like an agreement to serve as a nominal rather than real party in interest.  *See* above at § I.  No plaintiff has directed the Court to any precedent treating a defendant's objection to an assignment as conferring a real interest upon the assignor.

As to the second caveat, "retain[ing] a right to pursue" differs considerably from actually "pursu[ing] coverage claims."  ¶ 88.  Nothing about the pleadings indicates Angulo Transportation is in fact seeking to litigate its right to a legal defense or its right against future losses.  Reserving a right is not the same thing as pursuing a right.  And all claims in the amended complaint are brought either by Cordes in her individual capacity or by Cordes as the assignee (in conjunction with Angulo Transportation and Guzman).  *See* Amended Complaint ¶¶ 98–172.  Because Angulo Transportation doesn't assert any claims alone, any interest it may have in claims "not assignable" to Cordes (whatever contingent bundle of rights that might represent) doesn't factor into this dispute.

As to the other claims, as Cordes noted, the amended complaint doesn't "add any new cause of action."  Reply on Motion to Amend (DN 45) at 1.  It merely would add "focus" to the factual allegations on the scope of the assignment, as well as the extent of Angulo and Guzman's damages.  Even if the Court did allow amendment, the amended complaint wouldn't allow any of the claims to survive.  The Court therefore **denies as futile the motion for leave to amend (DN 23)**.

## ORDER

The Court denies the motion to remand (DN 24), dismisses Angulo Transportation and Guzman on its own motion, denies as moot Gallagher's motion to file a sur-reply (DN 47), denies as moot United Specialty's motion to dismiss (DN 6), grants Gallagher's motion to dismiss (DN 21), grants OneSource's motion for judgment on the pleadings (DN 8), grants Texcaz's motion for judgment on the pleadings (DN 26), grants Vaccaro's motion for judgment on the pleadings (DN 49), and denies Cordes's motion for leave to amend (DN 23).

Benjamin Beaton, District Judge
United States District Court

March 29, 2022